Matthew S. Disbrow (SBN 294764)
mdisbrow@honigman.com
HONIGMAN LLP
660 Woodward Avenue
Detroit, Michigan 48226
Telephone: 313 465 7372
Facsimile:  313 465 7373
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOSPITAL OF SAINT RAPHAEL<br>BRIDGEPORT HOSPITAL<br>YALE NEW HAVEN HOSPITAL<br>LAWRENCE & MEMORIAL HOSPITAL<br>PARKVIEW COMMUNITY HOSPITAL<br>SAN GABRIEL VALLEY MEDICAL CENTER<br>AMH ANAHEIM REGIONAL MEDICAL<br>CENTER<br>WHITTIER HOSPITAL MEDICAL CENTER<br>MONTEREY PARK HOSPITAL<br>GARFIELD MEDICAL CENTER<br><br>    Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, SECRETARY OF<br>HEALTH AND HUMAN SERVICES,<br><br>    Defendant. | Case No.  2:22-CV-002794<br><br>**COMPLAINT FOR DECLARATORY, RESTITUTIONARY, AND INJUNCTIVE RELIEF AND FOR SUMS DUE UNDER THE MEDICARE ACT FROM FINAL PRRB DECISION IN CASES 13-3842GC et al.** |

## I.     INTRODUCTION

1.     Plaintiffs (also referred to hereinafter as the "Hospitals") were, at all relevant times, hospitals that participated in the Medicare and Medicaid programs.

1

The Hospitals challenge the policy of Defendant Xavier Becerra, Secretary of Health and Human Services (the "Secretary") of treating patient days for which no payment was received under Medicare Part A as nonetheless "entitled to benefits under part A" for purposes of calculating both fractions of the Disproportionate Share Hospital ("DSH") payment adjustment. See 42 U.S.C. §1395ww(d)(5)(F)(vi) (the "Medicare DSH Statute"). If the Secretary's treatment of unpaid Part A days as "days entitled to benefits under part A" is upheld, the Hospitals contend that the Secretary must at least apply that interpretation of the word "entitled" consistently by also treating days for which no supplemental security income payments were received as days "entitled to supplemental security income benefits" under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

As explained below, the Secretary's policy of applying different interpretations to the same term, "entitled," used in the same sentence of the statute is the epitome of arbitrary and capricious agency action and must be reversed. *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 20 n.1 (D.C. Cir. 2011) (Kavanagh, J., concurring) ("HHS thus interprets the word "entitled" differently within the same sentence of the statute. The only thing that unifies the Government's inconsistent definitions of this term is its apparent policy of paying out as little money as possible. I appreciate the desire for frugality, but not in derogation of law."); *see also Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 799 (D.C. Cir. 1984) ("It would

be arbitrary and capricious for [the Secretary] to bring varying interpretations of the statute to bear, depending upon whether the result helps or hurts Medicare's balance sheets . . . . ").

In *Empire Health Found. v. Price*, 334 F.Supp. 3d 1134 (E.D. Wash. 2018); the court found that the Secretary's notice failed to satisfy the procedural rulemaking requirements of the APA and that the regulation is procedurally invalid. The decision in *Empire Health Found.* was appealed to the United States Court of Appeals for the Ninth Circuit, which held that the regulation was substantively invalid. *Empire Health Found. v. Price*, 958 F3d. 873; 2020 WL 2123363; 20 Cal. Daily Op. Serv.4283. The United States Supreme Court has granted the Secretary's petition for certiorari, *Xavier Becerra, Secretary of Health and Human Services v. Empire Health Foundation*, Case No. 20-1312, and conducted oral argument on November 29, 2021. The decision of the United States Supreme Court may narrow the issues or be dispositive of the instant case and *Torrance Memorial Medical Center*.

## II.   **JURISDICTION AND VENUE**

2.     This action arises under Title XVIII of the Social Security Act, as amended ("Medicare Act") (42 U.S.C. §§1395 et. seq.), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 et seq.

3.     This Court has jurisdiction under 42 U.S.C. §1395oo(f)(1) to review a final decision of the Provider Reimbursement Review Board ("PRRB"). Plaintiffs

timely commenced their appeals before the PRRB.   Plaintiffs challenged the Secretary's regulation regarding the DSH adjustment.   The PRRB lacks authority to decide the validity of the Secretary's DSH adjustment regulation.   *See, supra*, *Empire Health Found. v. Price*, 334 F.Supp. 3d 1134 (E.D. Wash. 2018).   When as here a regulation is in dispute, the appropriate procedure is for the PRRB to order expedited judicial review("EJR") as provided by 42 U.S.C. §1395oo(f)(1), which enables the Plaintiffs to proceed before this Court.   Accordingly, the Plaintiffs requested that the PRRB grant an order for EJR. The statute 42 U.S.C. §1395oo(f)(1) requires the PRRB to decide an EJR request within thirty days.   In response to the Plaintiffs' requests for EJR, the Medicare Appeals Contractor Federal Specialized Services ("FSS") filed a letter dated April 15, 2022 with the PRRB requesting that the PRRB delay by 60 days its decision regarding the Plaintiffs' request for EJR. FSS bases this request on its purported need to review jurisdiction. Exhibit A. Upon information and belief the PRRB will grant the request of FSS to delay by 60 days its decision regarding the Plaintiffs' request for EJR, as the PRRB has done in other cases pending before the Court.   See, e.g., *Tucson Medical Center et al. v. Becerra*, No.  22-00989-TJH-JPR, Plaintiffs'  First  Amended  Complaint  (Document  13, 3/30/2022), Paragraph 3 and Exhibits A, B, C, D, G, H and I. [1]   The statute allows a

---

[1] The PRRB's External User Manual Supplement provides that up to 100 cases may be included in a consolidated EJR request.

4

hospital to initiate an action in this Court if the PRRB determines that expedited judicial review is appropriate or fails to make a determination as to its authority within 30 days after receipt of a request for such a determination.    *See* 42 U.S.C. § 1395oo(f)(1); *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 354 (D.C. Cir. 2017) ("The expedited judicial review provision makes it clear that 'if the Board fails to render [a] determination' on its authority within 30 days, 'the provider may bring a civil action . . . with respect to the matter in controversy contained in such request for a hearing.'").  As evidenced by the FSS letter requesting a 60 day delay, Exhibit A, upon information and belief the PRRB will issue a response granting the requested delay and thus in effect stating that it has no intention of complying with the thirty day deadline prescribed by the statue.  Accordingly, upon information and belief the PRRB will fail to make the EJR determination within thirty days as prescribed by the statute.  The Plaintiffs commence this action within 60 days of the dates of the date of the FSS letter attached as Exhibit A.

    4.    Pursuant to 42 U.S.C. §1395oo(f)(1), venue is proper in this judicial district because the greatest number of Hospitals is located in this judicial district.

---

https://www.cms.gov/files/document/oh-cdms-prrb-user-manual-supplement-consolidated-ejr-case-action.pdf

Thus, the PRRB has assumed the responsibility of processing an EJR request that includes up to 100 cases.  That the Plaintiffs filed EJR requests including multiple cases, therefore, is not a valid justification for the PRRB to fail to act within the statutorily prescribed thirty-day period.

COMPLAINT FOR DECL, REST. AND INJ. RELIEF
43540239.1

### III.   PARTIES

5.     The Hospitals in this action and Hospital fiscal years at issue are identified in the caption and the Lists of Cases included with the decisions of the Provider Reimbursement Review Board referenced as Exhibit A.[2]

6.     Defendant, XAVIER BECERRA is the Secretary of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington D.C. 20201, the federal agency responsible for the administration of the Medicare and Medicaid Programs.   Defendant BECERRA is sued in his official capacity. References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

7.     The Center for Medicare and Medicaid Services ("CMS") is a component of the Department of Health and Human Services ("HHS") with responsibility for day-to-day operations and administration of the Medicare program.   References to CMS herein are meant to refer to the agency and its predecessors.

### IV.   THE MEDICARE PROGRAM

8.     Congress enacted the Medicare Program (Title XVIII of the Social Security Act) in 1965.   As originally enacted, Medicare was a public health insurance

---

[2] In the event of any discrepancy between the listing of Plaintiffs in the caption of this Complaint and the listing of Plaintiffs participating in each of the cases before the PRRB in Exhibit A, the latter shall govern.

program that furnished health benefits to the aged, blind and disabled.  Over the years, the scope of benefits and covered individuals has been expanded.

9.    Among the benefits covered by Medicare are inpatient hospital services.  For cost reporting years beginning prior to October 1, 1983, the Medicare Program reimbursed inpatient hospital services on a "reasonable cost" basis.  42 U.S.C. §1395f(b).  Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most acute care hospitals, including Plaintiffs, for inpatient operating costs.  42 U.S.C. §1395ww(d).  Under PPS, hospitals are paid a fixed amount for services rendered based upon diagnosis-related groups ("DRGs"), subject to certain payment adjustments, such as the DSH payment at issue here.

10.   The Secretary has delegated much of the responsibility for administering the Medicate Program to CMS, which was formerly known as the Health Care Financing Administration.  The Secretary, through CMS, contracted out many of the audit and payment functions for inpatient hospital care furnished to Medicare program beneficiaries to organizations known as fiscal intermediaries or Medicare administrative contractors ("Medicare contractor").  42 U.S.C. §1395h.

11.   At the close of the fiscal year, a hospital provider of services must submit to its Medicare contractor a cost report showing the allowable costs incurred and amounts due from Medicare for the fiscal year and the payments received from

Medicare.  The Medicare contractor is required to audit the cost report and inform the hospital provider of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR").  42 CFR §405.1803.

12.    A hospital provider dissatisfied with its Medicare contractor's determination may file an appeal to the Provider Reimbursement Review Board ("PRRB") as long as the amount in controversy is $10,000 or more and the request for hearing is within 180 days of the date the hospital provider receives the NPR.  42 U.S.C. §1395oo(a).  The PRRB was established by the Social Security Amendments of 1972 (Pub. L. 92-603) as a national, independent forum for hearing and deciding payment disputes between hospital providers and their Medicare contractors.

13.    Upon filing a timely hearing request, a hospital provider may add specific Medicare payment issues to the original hearing request by submitting a written request to the PRRB within no later than 60 days after the expiration of the applicable 180-day period to file the initial hearing request.  42 C.F.R. §405.1835(e).

14.    Pursuant to PRRB Rule 16 a hospital provider may transfer a specific issue from an individual appeal to an existing group appeal when there is a single common issue to be resolved.  The PRRB Rules set out the documentation requirements for such a transfer.

15.     The decision of the PRRB is a final administrative decision, unless the Secretary, through the Administrator of CMS, reviews the PRRB's decision; the Administrator may reverse, affirm or modify the PRRB's decision.   42 U.S.C. §1395oo(f).

16.     The Medicare statute authorizes the PRRB to determine that it is without authority to decide a question of law or regulations relevant to a matter in controversy in an appeal before the PRRB and to grant the right to expedited judicial review. 42 U.S.C. § 1395oo(f)(1). Pursuant to the Secretary's regulations, the PRRB is bound by agency rules and rulings, like the 2004 rule at issue. 42 C.F.R. § 405.1867. Accordingly, the statute allows a hospital to request a PRRB determination as to its authority to decide a question of law or regulations and to initiate an action in this Court if the PRRB determines that expedited judicial review is appropriate or fails to make a determination as to its authority within 30 days after receipt of a request for such a determination.   *See* 42 U.S.C. § 1395oo(f)(1); *Los Angeles Haven Hospice, Inc. v. Sebelius,* 638 F.3d  644 at 652 (Ninth Cir.2011) (PRRB lacks authority to decide purely legal issue); *Empire Health Found. v. Price*, 334 F.Supp. 3d 1134 (E.D. Wash. 2018) (EJR granted over plaintiffs' challenge to DSH adjustment regulation): *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 354 (D.C. Cir. 2017) ("The expedited judicial review provision makes it clear that 'if the Board fails to render [a] determination' on its authority within 30 days, 'the provider

may bring a civil action . . . with respect to the matter in controversy contained in such request for a hearing.'"); *Allina Health Services v. Price,* 863 F.3d 937 at 941 ("A provider may bring suit in the district court even when the Board fails to make a timely determination of its authority to decide a case."). *Accord Methodist Hosp. of Memphis v. Sullivan*, 799 F. Supp. 1210, 1216 (D.D.C. 1992) *rev'd on other grounds, Adm'rs of Tulane Educ. Fund v. Shalala*, 987 F.2d 790 (D.C. Cir. 1993).

17.    The regulation implementing the expedited judicial review ("EJR") statute, 42 C.F.R. § 405.1842(f), sets forth an additional requirement for granting EJR, not found in the statute, that the Board have "jurisdiction to conduct a hearing on the specific matter at issue." When presented with a request for EJR, the regulations require that the Board "must make a preliminary determination of the scope of its jurisdiction (that is, whether the hearing request was timely, and whether the amount in controversy has been met)." *Id.* § 405.1840(a)(2). The regulation does not create any further conditions beyond those in the statute to establish jurisdiction for a Board appeal. *See* 42 C.F.R. §§ 405.1835, 405.1837. Under the EJR regulations, only after finding that the statutory requirements for jurisdiction have been met, as set forth in 42 C.F.R. § 405.1840(a)(2), does the Board then proceed to determine if it has the authority to decide a legal question relevant to a matter at issue. *Id.* § 405.1842(e)(1).

18.     When the PRRB grants a hospital provider's request for EJR because it has jurisdiction over an appeal but lacks the authority to grant the relief requested, the Administrator of CMS may only review the jurisdictional component of the PRRB's EJR decision.  The Administrator of CMS may not review the PRRB's determination of its authority to decide the legal question.   42 C.F.R. §405.1842(g)(1)(i) and (ii).

19.     A hospital provider has the right to obtain judicial review of any final decision of the PRRB, or of the Secretary, by filing a civil action within 60 days of the date on which notice of any final decision by the PRRB, or of any reversal, affirmance, or modification by the Secretary, is received.  42 U.S.C. §1395oo(f). Pursuant to 42 C.F.R. §405.1801 the date of receipt for a decision of the PRRB is presumed to be 5 days after the date of issuance of such decision.  If the PRRB grants EJR, the hospital provider may file a complaint in Federal district court in order to obtain review of the legal question.  42 C.F.R. §405.1842(g)(2).

V.     **THE MEDICARE DISPROPORTIONATE SHARE PAYMENT ADJUSTMENT**

20.     In 1986, Congress amended Title XVIII of the Social Security Act to require the Secretary to make additional payments to hospitals that serve "a significantly disproportionate number of low-income patients . . . "  42 U.S.C. §1395ww(d)(5)(F)(i)(1).  Eligibility for these "disproportionate share" (DS1-1) payments, and the level of these payments, is based on the calculation or a

"disproportionate share percentage" that considers the number of low-income patients a hospital serves.  See 42 U.S.C. §§1395ww(d)(5)(F)(v) and (vi).

21.   As the Ninth Circuit observed in *Portland Adventist Medical Ctr. v. Thompson*, 399 F.3d 1091, 1095 (9th Cir. 2005) (quoting *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996)):

> Congress "overarching intent" in passing the [Medicare] disproportionate share provision was to supplement the prospective payment system payments of hospitals serving "low income" persons . . . Congress intended the Medicare and Medicaid fractions to serve as a proxy for all low-income patients.

22.   To be eligible for the DSH payment, a hospital must meet certain systemic criteria, including a disproportionate patient percentage that exceeds the threshold.  The amount of the DSH payment then depends upon the extent to which the disproportionate patient percentage exceeds the threshold.

23.   The disproportionate patient percentage is statutorily defined as the sum of two fractions expressed as a percentage for a hospital's cost reporting period.  These fractions are commonly known as the "SSI fraction" and the "Medicaid fraction," respectively, and are defined as follows:

> (I)   The fraction (expressed as a percentage) the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such dates) were *entitled* to benefits under part A of this title and were *entitled* to supplemental security income benefits (excluding any State supplementation) under title XVI of this Act, and the denominator of which is the number of such hospital's patient

days for such fiscal year which were made up of patients who (for such days) were *entitled* to benefits under part A of this title,

(II)   The fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were *eligible* for medical assistance under a State plan approved under title XIX of this chapter, but who were not *entitled* to benefits under part A of this title, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi) (emphasis added).

24.   As set forth in the statutory language above, the numerator of the Medicaid fraction consists of days of patients who were both *eligible* for medical assistance under Title XIX, or Medicaid, and not entitled to benefits under Part A of Title XVII, or Medicare.  The denominator for the Medicaid fraction is the hospital's total patient days for the period.  The statutory language defines the SSI fraction as consisting solely of days for patients who were "*entitled* to benefits under part A" of Medicare.  The denominator of the SSI fraction includes all Part A days, and the numerator includes only those Part A days for patients who are also *entitled* to social security income ("SSI") benefits.

25.   The Secretary implemented the Medicare DSH provisions through 42 C.F.R. § 412.106.  The portion of the regulation which applies to the SSI fraction, prior to the change in language in 2008, states:

(b)   *Determination of a hospital's disproportionate patient percentage-*

(1)   *General Rule*.   A hospital's disproportionate patient percentage is determined by adding the results of two computations and expressing that sum as a percentage.

(2)   *First computation*: *Federal fiscal year*.   For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS-

    (i)   Determines the number of **<u>covered</u>** patient days that-

        (A)   Are associated with discharges occurring during each month; and

        (B)   Are furnished to patients who during that month were entitled to both Medicare Part A and SSI, excluding those patients who received only State supplementation;

    (ii)   Adds the results for the whole period; and

    (iii)   Divides the number determined under paragraph (b)(2)(ii) of this section by the total number of patient days that-

        (A)   Are associate with discharges that occur during that period; and

        (B)   Are furnished to patients entitled to Medicare Part A.

(emphasis added to the word "covered").  The change to the regulation, which first appeared in the 2008 regulations, but allegedly effective October 1, 2004, omits the word "covered":

(b)   *Determination of a hospital's disproportionate patient percentage-*

(1)   *General Rule*.   A hospital's disproportionate patient percentage is determined by adding the results of two computations and expressing that sum as a percentage.

(2)   *First computation: Federal fiscal year*.   For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS-

    (i)   Determines the number of patient days that-

        (A)   Are associated with discharges occurring during each month; and

        (B)   Are furnished to patients who during that month were entitled to both Medicare Part A and SSI, excluding those patients who received only State supplementation;

    (ii)   Adds the results for the whole period; and

    (iii)   Divides the number determined under paragraph (b)(2)(ii) of this section by the total number of patient days that-

COMPLAINT FOR DECL, REST. AND INJ. RELIEF
43540239.1

> (A)   Are associate with discharges that occur during that period; and
>
> (B)   Are furnished to patients entitled to Medicare Part A.

26.   While the Secretary attempted to enshrine her policy in regulation by amending 42 C.F.R. § 412.106(b)(2) through rulemaking as described above, she has now acquiesced to the D.C. Circuit's decision in *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014) ("*Allina*") that her rulemaking process violated the APA.  Since all hospitals have recourse to the D.C. Circuit for their Medicare reimbursement appeals, the Secretary conceded that "the 2004 Final Rule has ceased to exist."  See Def's Response to the Court's Sept. 29, 2014 Minute Order at 2, *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75 (D.D.C. 2012), *aff'd in part*, *rev'd in part*, 746 F.3d at 1111 (No. 1:14-cv-01415-RMC), ECF No. 13 ("Because the D.C. Circuit upheld [the vacat[ur] of the 2004 Final Rule] . . ., the 2004 Final Rule has ceased to exist"); see also 42 U.S.C. §1395hh(a)(4) (stating that when a final Medicare rule is not the logical outgrowth of a proposed rule that it "shall be treated as a proposed regulation and shall not take effect until there is the further opportunity for public comment and a publication of the provision again as a final regulation").

That recently invalidated regulation, however, was clearly relied upon in establishing the Hospitals' DSH percentage for the relevant cost reporting periods.

While the Hospitals believe that the reliance on the invalidated regulation was error, it is nonetheless true that the Secretary continues to consider an individual to be "entitled to benefits under Part A," regardless of whether the days were "covered" or not "covered" by Medicare Part A, even in the absence of the invalidated regulation.

In other words, it is the Secretary's policy that non-covered categories of Medicare Part A days — for example, days for which Part A benefits have been exhausted, days for which payment was made under Part C and not Part A, and days for which Medicare Part A was a secondary payor and therefore made no payments, are included in the SSI fraction and, even if Medicaid eligible, excluded from the Medicaid fraction.

27.     Despite the Secretary's policy of treating unpaid Part A days as days entitled to benefits under Part A, CMS has at all times required that a beneficiary be paid SSI benefits (or "covered" by SSI) during the period of his or her hospital stay in order for such days to be included in the numerator of the SSI fraction as a day "entitled to supplemental security income benefits." The Secretary, therefore, does not include days in the numerator of the SSI fraction when individuals were eligible for SSI but did not receive SSI payment during their hospitalization for such reasons as failure of the beneficiary to have a valid address, representative payee problems, Medicaid paying for more than 50% of the cost of care in a medical facility, or the

period of hospitalization is during the first month of eligibility before a cash payment is made.  This policy ultimately reduces the Secretary's DSH payment obligation, as does the Secretary's wholly inconsistent policy of treating unpaid Part A days as days entitled to benefits under Part A.

28.     Of more than 100 Social Security Administration payment status codes, the Secretary only uses C01, M01, and M02, to identify SSI entitled individuals.  75 Fed. Reg. 50280-50281 (August 16, 2010).

29.     The Secretary is aware of other payment codes, as identified in the August 16, 2010 Federal Register, that could be used to determine the numerator of the 551 fraction, but has adopted a policy of including only codes reflecting actual SSI cash payments.  *Id*.

30.     In sum, the Secretary contends that "the phrase 'entitled to benefits under part A' applies to all individuals who meet the statutory criteria in 42 U.S.C. § 426(a) and (b) for receiving 'hospital insurance benefits under Part A,'" *Northeast Hosp. Corp.*, 657 F.3d at 20 n.1, but does not interpret the analogous phrase "entitled to supplemental security income benefits" as encompassing all individuals who meet the statutory criteria in 42 U.S.C. § 1382(a) for receiving supplemental security income benefits.  Because these contradictory interpretations reduce the Secretary's DSH payment obligation, they can only be reconciled with the Secretary's interest in "paying out as little money as possible."  *Id*.  The Secretary has, therefore,

arbitrarily and capriciously adopted two conflicting interpretations of the same word in the same sentence.

## VI.   **THE HOSPITALS' ADMINISTRATIVE APPEAL**

31.   Pursuant to the procedures set forth at 42 U.S.C. § 1395oo, the Hospitals have challenged and are dissatisfied with the Secretary's failure to make a the appropriate DSH payment as a result of the Secretary's policy to treat days for which no Part A payments were made as nonetheless "entitled to benefits under part A."   The Hospitals timely filed appeals with the PRRB. The Hospitals' appeals satisfied all jurisdictional requirements for an appeal set forth at 42 U.S.C. § 1395oo(a)-(b).   The Hospitals' request for appeal before the PRRB specifically challenged the Part A days issue with respect to the DSH Medicare and Medicaid Fractions.  Because the Hospitals challenged the DSH adjustment regulation, and as did the plaintiff in *Empire Health Found. v. Price*, 334 F.Supp. 3d 1134 (E.D. Wash. 2018), they filed requests for EJR.

32.   Upon information and belief, in response to the request of FSS the PRRB will notify the Plaintiffs that it will not rule on their requests for expedited judicial review within 30 days as required by 42 U.S.C. § 1395oo(f)(1).   See, e.g., *Tucson Medical Center et al. v. Becerra*, No. 22-00989-TJH-JPR, Plaintiffs' First Amended Complaint (Document 13, 3/30/2022), Paragraph 3 and Exhibits A, B, C, D, G, H and I.  The PRRB likely will claim authority to delay its action on these

requests under the agency's regulations at 42 C.F.R. § 405.1801(d)(2), which states that deadlines for the PRRB to act are stayed when the PRRB is unable to conduct business in the usual manner. Similar PRRB letters have stated that the Board has continued operations through the COVID-19 pandemic but is "adjust[ing its] operations and [is] maximizing telework for the near future."  See, e.g., *Tucson Medical Center et al. v. Becerra*, No. 22-00989-TJH-JPR, Plaintiffs' First Amended Complaint (Document 13, 3/30/2022), Paragraph 3 and Exhibits A, B, C, D, G, H and I Exhibit A.

33.    Insofar as the regulation in 42 C.F.R. § 405.1801(d)(2) provides that the PRRB need not make a determination as to its authority to decide a question of law or regulations in a request for expedited judicial review within the 30-day statutory time period where the PRRB "is unable to conduct business in the usual manner due to extraordinary circumstances beyond its control," the regulation is inconsistent with the plain language and intent of the statute, which provides no mechanism for the Board to delay or otherwise decide not to make a determination on whether it has authority to decide a question within the 30-day period for rendering an EJR decision. *See* 42 U.S.C. § 1395oo(f)(1); H.R. Rep. No. 1167, 96th Cong., 2d Sess. 394 (1980), U.S.C.C.A.N. 1980, 5526, 5757 (EJR provision was intended to grant "[M]edicare providers the right to obtain immediate judicial review.").

34.    The Hospitals now file this civil action within 60 days of their receipt of the FSS letter attached as Exhibit A upon information and belief that the PRRB will order a 60 day extension of its deadline to decide the EJR request, evidencing that the PRRB has no intention of deciding, and in fact will not decide, the Plaintiffs' EJR requests within thirty days as prescribed by statute.

## VII.   ASSIGNMENT OF ERRORS

35.    The applicable provisions of the APA provide that the "reviewing court shall ... hold unlawful and set aside agency action ... found to be... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. §706(2).

36.    The Secretary's determination to treat days for which no Part A payments were made as nonetheless "entitled to benefits under part A" is arbitrary and capricious and otherwise contrary to law because it is:

   a)    inconsistent with the plain language of the Medicare statute and conflates the statutory term "entitled" with the statutory term "eligible";

   b)    inconsistent with the plain language of the controlling pre-2004 regulation, which explicitly included only "covered," i.e., "paid," Part A days

and that pre-2004 is controlling since CMS admitted that its attempt to amend that 2004 regulation was procedurally invalid and "ceased to exist";

> c)      inconsistent with the Secretary's longstanding interpretation of "entitled to benefits under Part A" to mean "entitled to payment under Part A," see 55 Fed. Reg. 35990, 35996 ("entitle[ment] to benefits under part A" ceases when "[e]ntitlement to payment under part A ceases"); and

> d)      inconsistent with the Secretary's longstanding interpretation of "entitled to supplemental security income benefits" as including only SSI days for which payment was actually made, see, e.g., 75 Fed. Reg. 50042, 50280 (Aug. 16, 2010) (stating that "[e]ntitlement to" receive SSI benefits [requires that an individual] 'be paid benefits by the Commissioner of the Social Security'. . )

37.    The Secretary's interpretation of "entitled to supplemental security income benefits" under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) as including only days for which actual SSI payments were made is arbitrarily and capriciously inconsistent with her policy described above of treating unpaid Part A days as "entitled to benefits under part A" and arbitrarily assigns two different meanings to the same term "entitled."

In addition, because the purpose of the DSH adjustment is to provide additional payment to hospitals that incur higher costs in treating low-income

patients, an agency interpretation that does not take into account SSI payment status codes associated with eligible SSI individuals is also unreasonably and impermissibly inconsistent with the legislative history and purpose of the Medicare DSH Statute.

38.    For the reasons set forth above, the Secretary's amendment of the regulation, and policy in its application, conflicts with the Medicare DSH Statute and is otherwise arbitrary and capricious, as well as an abuse of discretion.

WHEREFORE the Hospitals request an order:

a)    Declaring invalid and enjoining the Secretary from applying her policy that unpaid Medicare Part A days are "days entitled to benefits under part A" for purposes of the DSH SSI and Medicaid fractions or, in the alternative, directing the Secretary to include unpaid SSI eligible patient days in the numerator of the SSI percentage utilizing SSI payment status codes that reflect the individuals' eligibility for SSI — even if the individuals did not receive SSI payments:

b)    Directing the Secretary to calculate the Plaintiff Hospitals' DSH payment consistent with that Order and to make prompt payment of any additional amounts due to the Plaintiff Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2): and

c)      For Plaintiff's costs and reasonable attorney's fees, and for such other and further relief as the Court deems appropriate.

Dated:  April 27, 2022                    Respectfully submitted,

                                          HONIGMAN LLP

                                          By: /s/ Mathew S. Disbrow_____
                                             Matthew S. Disbrow (SBN 294764)

                                          660 Woodward Avenue
                                          Detroit, MI 48226
                                          313 465 7372
                                          Attorneys for Plaintiffs: